460 A.2d 310

**COMMONWEALTH of Pennsylvania**

v.

**Milton E. SCARBOROUGH, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 18, 1982.

Filed April 29, 1983.

Petition for Allowance of Appeal Denied Oct. 12, 1983.

522

John M. Humphrey, Williamsport, for appellant.

Kenneth D. Brown, District Attorney, Williamsport, for Commonwealth, appellee.

Before WIEAND, BECK and MONTEMURO, JJ.

WIEAND, Judge:

Milton Scarborough was tried jointly with Robert Hubble on charges arising from the killing of Mrs. Claire Kepner and her two small children by persons who broke into their Lycoming County home and took approximately eighty ($80.00) dollars. A jury found Scarborough guilty of burglary, robbery, theft, conspiracy and three counts of murder in the third degree.[1] Post verdict motions were denied, a sentence of imprisonment was imposed, and this appeal followed. Scarborough contends that the evidence was insufficient to sustain the jury's finding that he participated in the commission of the crimes against Mrs. Kepner and her children. He also argues that he was unfairly prejudiced by having the charges against him consolidated with those against Robert Hubble for purposes of trial and that extra-judicial statements made by David Hubble were improperly admitted against him. For reasons appearing in this opinion, we affirm the judgment of sentence.

In reviewing the sufficiency of the evidence to sustain the convictions, we are required to view the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove the elements of the crimes charged and that appellant committed those crimes beyond a reasonable doubt. *Commonwealth v. Bachert*, 499 Pa. 398, 402, 453 Pa. 931, 933 (1982); *Commonwealth v. Lovette*, 498 Pa. 665, 669, 450 A.2d 975, 977 (1982); *Commonwealth v. Goldblum*, 498 Pa. 455, 466, 447 A.2d 234, 240 (1982);

1. The same jury found Robert Hubble guilty of similar offenses but fixed his degree of guilt at murder in the first degree.

*Commonwealth v. Grabowski,* 306 Pa.Super. 483, 487, 452 A.2d 827, 829 (1982); *Commonwealth v. Lowry,* 306 Pa.Super. 277, 279, 452 A.2d 552, 553 (1982). Moreover, we must consider all the evidence received, whether the trial court's rulings thereon were correct or incorrect. *Commonwealth v. Harper,* 485 Pa. 572, 576, 403 A.2d 536, 538 (1979); *Commonwealth v. Hoskins,* 485 Pa. 542, 546, 403 A.2d 521, 523 (1979); *Commonwealth v. Waldman,* 484 Pa. 217, 222–223, 398 A.2d 1022, 1025 (1979); *Commonwealth v. Plusquellic,* 303 Pa.Super. 1, 4, 449 A.2d 47, 49 (1982); *Commonwealth v. Corish,* 296 Pa.Super. 92, 94–95, 442 A.2d 311, 313 (1982).

On the night of August 5, 1976, Scarborough, Robert Hubble, David Hubble, John Shafer, Colin Brown and others had gathered at Ricky Snyder's "shack" on the outskirts of Muncy in Lycoming County. With ten dollars borrowed from Colin Brown, Scarborough, Shafer and the two Hubble brothers left in David Hubble's car, with Scarborough driving, to buy some beer. They purchased a case of beer at a bar in Muncy and drove around the countryside as they drank it. Robert Hubble suggested that they "hit" a place and, hearing no objections, directed appellant to pull into the driveway of a randomly selected residence. Leaving Shafer behind as lookout,[2] the three remaining men ran to and entered the home occupied by Mrs. Kepner and her two children. When they returned to the car, appellant again took the wheel and Shafer observed Robert Hubble pass a handgun to his brother, David, with instructions to place it inside the glove compartment of the car. They then went into Muncy once more, purchased additional beer with money obtained from the Kepner home, and returned to the "shack." There, David Hubble told Shafer, Brown and Snyder, in the presence of his brother and appellant, that they had killed the people in the house in order to get their money. He also described the manner in which he had played "tic-tac-toe" with a knife on the abdomen of one of

---

2. John Shafer, who had not entered the Kepner home but had remained outside as a lookout, entered pleas of guilty to robbery, burglary and theft. He testified as a Commonwealth witness.

the children.[3] Appellant did not deny or refute in any way what David Hubble had said. Robert Hubble remonstrated with his brother, however, telling him to "shut the f___ up."

Other evidence produced by the Commonwealth showed that the approximate sum of eighty dollars had been taken from the Kepner home and that Mrs. Kepner and her two small children had been shot to death with the same .32 caliber pistol. The abdomen of one of the children had been slashed repeatedly with a knife.

■ This evidence was sufficient to sustain appellant's convictions. He had been the driver of the vehicle used to get to and escape from the scene of the crime. It was he who, at the request of Robert Hubble, had pulled the car into the Kepner driveway and accompanied Robert and David Hubble into the home. He was present and participated in the robbery and made no attempt to prevent the killings. Thereafter, he drove to the bar where stolen money was used to purchase more beer before returning to the "shack." Thus, although the evidence did not show that appellant had committed the actual killings, he was present and actively participating in the burglary and robbery at the Kepner home. He was vicariously liable criminally for the acts committed by Robert and David Hubble in furtherance of the common scheme to rob Mrs. Kepner and take her money. See: 18 Pa.C.S. §§ 306, 2501(a). See also: *Commonwealth v. Tate,* 485 Pa. 180, 185, 401 A.2d 353, 355 (1979); *Commonwealth v. Roux,* 465 Pa. 482, 490, 350 A.2d 867, 871 (1976); *Commonwealth v. Darden,* 311 Pa.Super. 170, 173, 457 A.2d 549, 550 (1983); *Commonwealth v. Plusquellic, supra,* 303 Pa.Superior at 5, 449 A.2d at 50. See generally: *Commonwealth v. Davenport,* 307 Pa.Super. 102, 110, 452 A.2d 1058, 1062 (1982).

■ "Questions of consolidation or severance of defendants for trial [rest] in the discretion of the trial judge and his rulings on such matters will not be disturbed on appeal

3. David Hubble was tried by a separate jury, and he, too, was found guilty of all charges with findings of murder in the second degree.

except for manifest abuse of discretion." *Commonwealth v. Johnson*, 291 Pa.Super. 566, 581–582, 436 A.2d 645, 653 (1981), quoting *Commonwealth v. Tolassi*, 258 Pa.Super. 194, 199, 392 A.2d 750, 753 (1978), *aff'd*, 489 Pa. 41, 413 A.2d 1003 (1980). When charges against several defendants are consolidated for trial, however, the trial judge must exercise extreme care that evidence admissible against one defendant is not improperly received against another.

On the evening of the killings and while appellant, Shafer and the Hubble brothers remained at the "shack," David Hubble said that they had had to kill the woman and the kids to get the money. Appellant did not deny or refute this in any way. Robert Hubble told his brother to "shut up." On the following night,[4] at the Step Inn, David Hubble again referred to the Kepner "job" as well as his playing tic-tac-toe. None of the witnesses at trial recalled that David Hubble's statements on this occasion included any details of the prior day's events. On this occasion, Robert Hubble threatened to kill his brother if he continued to discuss the Kepner job. Appellant, however, was not present.

The trial court held that all of David Hubble's extra-judicial statements were admissible against appellant and Robert Hubble because they were made during the conspiracy and in furtherance of it. Subsequently, the court en banc held that the receipt of these statements was proper for the additional reason that the failure of appellant and Robert Hubble to deny the statements of David Hubble constituted tacit or implied admissions.

▬▬ If a person conspires with others to do an unlawful act, each represents the other with respect to the act to be accomplished, and everything said by one in furtherance of and during the continuance of the common purpose is admissible against all. *Commonwealth v. Holloway*, 429

---

**4.** Shafer testified that the encounter occurred on the night after the killings. Brown's recollection was that it was the second night following the killings.

Pa. 344, 346, 240 A.2d 532, 533–534 (1968). Thus, declarations of one co-conspirator made to third parties, even in the absence of other conspirators, are admissible as evidence against all. *Commonwealth v. Evans*, 489 Pa. 85, 92, 413 A.2d 1025, 1028 (1980); *Commonwealth v. Porter*, 449 Pa. 153, 161, 295 A.2d 311, 314 (1972); *Commonwealth v. Ransom*, 446 Pa. 457, 461–462, 288 A.2d 762, 764 (1972); *Commonwealth v. Ellsworth*, 409 Pa. 505, 509, 187 A.2d 640, 642 (1963); *Commonwealth v. Wilson*, 394 Pa. 588, 607, 148 A.2d 234, 244, *cert. denied*, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959); *Commonwealth v. Weitkamp*, 255 Pa.Super. 305, 323–324, 386 A.2d 1014, 1024 (1978). However, if the common enterprise is at an end, whether by accomplishment or abandonment, evidence of the declarations of one of the actors made thereafter is not admissible against his former conspirators. *Commonwealth v. Evans, supra*, 489 Pa. at 92–93, 413 A.2d at 1028–1029; *Commonwealth v. Ransom, supra*, 446 Pa. at 461–462, 288 A.2d at 764; *Commonwealth v. Holloway, supra*, 429 Pa. at 346, 240 A.2d at 534; *Commonwealth v. Berman*, 119 Pa.Super. 315, 181 A. 244 (1935).

In *Commonwealth v. Pass*, 468 Pa. 36, 360 A.2d 167 (1976), the Supreme Court addressed the issue of the duration of a conspiracy and adopted the following language from *United States v. Hickey*, 360 F.2d 127, 141 (7th Cir.1966), *cert. denied*, 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966):

"The duration of a conspiracy depends upon the facts of the particular case, that is, it depends upon the scope of the agreement entered into by its members. Generally, the conspiracy ends when its principal objective is accomplished because no agreement to retain secrecy after the achievement of the unlawful end can be shown or implied by mere 'acts of covering up.' ... But the fact that the 'central objective' of the conspiracy has been nominally attained does not preclude the continuance of the conspiracy. Where there is evidence that the conspirators originally agreed to take certain steps after the

principal objective of the conspiracy was reached, or evidence from which such an agreement may reasonably be inferred, the conspiracy may be found to continue. *Atkins v. United States,* 307 F.2d 937, 940 (9th Cir.1962); *cf., United States v. Allegretti,* 340 F.2d 254, 256 (7th Cir.1964), *cert. denied,* 381 U.S. 911, 85 S.Ct. 1531, 14 L.Ed.2d 433 (1965).... The crucial factor is the necessity for some showing that the later activities were part of the original plan."

*Commonwealth v. Pass, supra,* 468 Pa. at 45–46, 360 A.2d at 171. See also: *Commonwealth v. Evans, supra,* 489 Pa. at 92–93, 413 A.2d at 1028–1029.

■ The agreement in the instant case, i.e., the purpose for which Shafer, the Hubbles and appellant left the "shack," was to purchase beer for consumption and to spend an idle evening. In order to obtain additional funds to purchase beer, they decided to "hit" the Kepner home. After they had killed the occupants and taken their money, the conspirators purchased more beer and returned to the "shack," where the beer was drunk. These activities were all part of the original plan. Statements made by the conspirators while these activities continued were made during the continuance of the conspiracy and in furtherance of it. Therefore, the statements made by David Hubble at the "shack" were a part of the original conspiracy and were properly received in evidence against appellant. By the following evening, however, the original plan had been accomplished and the conspiracy had come to an end. Extrajudicial statements made by David Hubble at the Step Inn were not admissible against appellant as declarations made during and in furtherance of the conspiracy.

■ In the companion case of *Commonwealth v. Hubble,* 314 Pa.Super. ——, 460 A.2d 784, decided of even date herewith, we have held that David Hubble's declarations were admissible against Robert Hubble because the latter's failure to deny the accusations made by his brother constituted tacit or implied admissions. The rule is that "[i]f a person is accused of having committed a crime, under

circumstances which fairly afford him an opportunity to hear, understand, and to reply, and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution, and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or [tacit] admission of guilt." This statement of the rule, adopted from *People v. Preston*, 9 Cal.3d 308, 313–314, 107 Cal.Rptr. 300, 304, 508 P.2d 300, 304 (1973), has been followed continuously by the courts of Pennsylvania.[5] See: *Commonwealth v. Coccioletti*, 493 Pa. 103, 113–114, 425 A.2d 387, 392 (1981); *Commonwealth ex rel. Smith v. Rundle*, 423 Pa. 93, 98, 223 A.2d 88, 90 (1966); *Commonwealth v. Bolish*, 381 Pa. 500, 523, 113 A.2d 464, 476 (1955). Justification for the rule is "the age-long experience of mankind that ordinarily an innocent person will spontaneously repel false accusations against him, and that a failure to do so is therefore some indication of guilt." *Commonwealth v. Bolish, supra*, 381 Pa. at 523, 113 A.2d at 476.

David Hubble's declarations at the "shack" on the night of the killings were made in the presence of appellant, who made no attempt to deny or refute the accusatory remarks. The accusations made by the speaker and appellant's failure to respond, therefore, were admissible as tacit admissions. On the following evening, however, appellant was not present at the Step Inn. He could neither have heard nor responded to David Hubble's reference to the events of the prior day. It is clear, therefore, that David Hubble's statements at the Step Inn and his brother's response thereto were not admissible against appellant. If,

5. The rule of tacit admissions, of course, is circumscribed by Fifth Amendment guarantees against self-incrimination. *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A.2d 904 (1967), overruling in part *Commonwealth v. Vallone*, 347 Pa. 419, 32 A.2d 889 (1943). However, this limitation applies only to tacit admissions made while in the custody or presence of law enforcement personnel. *Commonwealth v. Coccioletti, supra*, 493 Pa. at 113–114, 425 A.2d at 392. See: *Commonwealth v. Schmidt*, 452 Pa. 185, 204–205, 299 A.2d 254, 255 (1973).

because of the joint trial, the court decided to receive this evidence, it had a duty at the very least to instruct the jury regarding its limited purpose. This was not done. The evidence was admitted without appropriate limitation upon the use to be made of it by the jury.

The error, however, was harmless and does not require the granting of a new trial. In the first place, appellant's participation in the conspiracy and his presence at the time of the killings had been fully established by the testimony of John Shafer. Moreover, appellant's failure to deny the incriminating statements made by David Hubble in appellant's presence immediately following the robbery and killings constituted an implied admission of his involvement. This evidence described the relevant events in much greater detail than the very general statements made by David Hubble at the Step Inn. Indeed, the evidence pertaining to statements made by David Hubble on this occasion was so vague and contained so little detail regarding the Kepner robbery that it had no evidentiary value whatsoever against anyone other than Robert Hubble. The statements made by David Hubble on this occasion did not incriminate appellant or implicate him in any way. Shafer's testimony was that on this occasion David Hubble had been "talking about the same—about the job, about the Kepners." On cross-examination, Shafer again said: "... he started talking about what happened, again, you know, just how to play ticktactoe and stuff, and, I don't know, about that time Bob came out ...." Brown's testimony did not refer to David's statements, for he arrived only as Robert Hubble told his brother to be quiet. The error in receiving this evidence without cautioning the jury that it was not competent evidence against appellant, therefore, was harmless beyond a reasonable doubt. *Commonwealth v. Evans, supra.* See generally: *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). It did not implicate appellant in the killings in any way.

■ Appellant also contends that the trial court erred in refusing a requested instruction regarding involuntary in-

toxication. Our examination of the record compels us to agree with the trial court's observation that there was no evidence of involuntary intoxication because appellant's defense was that he had not been present at the time of the killings.

Next, appellant complains because the trial court refused to award a new trial on grounds of after-discovered and recanting testimony. This evidence was the same evidence offered on behalf of Robert Hubble. We have considered the nature of that evidence and have reviewed the trial court's findings with respect thereto in the appeal of Robert Hubble, and there is no reason to repeat here what was said in the opinion filed in that case. Suffice it to say that we perceive no reason for disturbing the trial court's finding that this evidence was incredible and unworthy of belief.

 Finally, appellant contends that the trial court's sentence of three consecutive ten to twenty year terms on the murder convictions and concurrent terms for the lesser convictions was excessive because in the normal course of events Robert Hubble would become eligible for parole before he would. Imposition of a proper sentence is a matter committed to the sound discretion of the trial court; unless the sentence exceeds the statutory maximum or is so excessive as to constitute a manifest abuse of discretion, the trial court's determination will not be disturbed. *Commonwealth v. Plank*, 498 Pa. 144, 145, 445 A.2d 491, 492 (1982); *Commonwealth v. Townsend*, 497 Pa. 604, 606, 443 A.2d 1139, 1140 (1982); *Commonwealth v. Casuccio*, 308 Pa.Super. 450, 454, 454 A.2d 621, 633 (1982); *Commonwealth v. Parry*, 306 Pa.Super. 390, 393, 452 A.2d 781, 782 (1982). The trial court fully considered appellant's background and the nature of the crimes of which he had been convicted. There was no abuse of discretion. The parole possibilities, which are for the consideration of the Board of Probation and Parole, do not render appellant's sentence greater than Hubble's sentence of life imprisonment.

The judgment of sentence is affirmed.