530 A.2d 473

COMMONWEALTH of Pennsylvania, Appellee,

v.

Sharon K. COMITZ, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 19, 1987.

Filed Aug. 24, 1987.

600

Peter D. Goldberger, Bellefonte, for appellant.

Ray F. Gricar, District Attorney, Bellefonte, for Com., appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

This is an appeal from the judgment of sentence imposed following appellant's plea of guilty, but mentally ill, in connection with the murder of her infant son. After careful consideration of the briefs [1] and record on appeal, we conclude that we must affirm.

The victim, Garret Comitz, was born to appellant, Sharon Comitz, and her husband, Glenn Comitz, on December 3, 1984. One month later, on January 3, 1985, appellant drove Garret to a point in Centre County, Pennsylvania, where a stream called Black Bear Run passes under Route 504, and dropped him into the stream. Garret's body was found the next morning, fully clothed and lying face down in the water. As disclosed by a subsequent autopsy, the cause of death was either suffocation or exposure to the elements.

Appellant at first told state police, on the day before Garret's body was found, that Garret had been kidnapped from her car while it was parked at a shopping center. In

---

1. We note that appellant filed an application to quash a supplemental brief filed by appellee. The application having been referred to this panel for decision, we conclude that we will grant it. Accordingly, we have not considered appellee's supplemental brief in deciding the issues raised on appeal.

the weeks that followed, however, the police uncovered evidence implicating appellant in her son's death. The investigation eventually culminated in a complaint and information charging appellant with first and third degree murder.

Appellant initially entered a plea of not guilty to each offense. Thereafter, however, appellant agreed to plead guilty but mentally ill to the charge of third degree murder. At the change of plea hearing held June 14, 1985, the trial court accepted appellant's plea, finding that appellant was mentally ill at the time of the offense. After changing her plea and prior to being sentenced, appellant was examined by Dr. Robert Sadoff, a prominent forensic psychiatrist. At that time appellant was placed under hypnosis and, while hypnotized, acknowledged that she had killed Garret.

Following testimony and argument at sentencing, the trial court determined that appellant was not currently "severely mentally disabled," *see* 42 Pa.C.S. Sec. 9727, and then sentenced appellant, by order filed October 29, 1985, to a term of eight to twenty years imprisonment. Appellant filed a "Petition to Amend Sentence," which the trial court denied, treating the petition as a motion to modify sentence. Appellant then filed a timely notice of appeal on November 25, 1985. Appellant's counsel subsequently withdrew and were replaced by appellate counsel, who entered his appearance on May 6, 1986.

Before addressing the issues on appeal, we observe that appellant's mental condition has been the focus of attention in this matter. According to various medical records and reports received into evidence, appellant has a history of depressions associated with her family and with childbirth. Records from Geisinger Medical Center, for example, disclose that appellant suffered from postpartum depression following the birth of her first child, Nicole.[2] Appellant

2. Those records describe an incident in which Nicole was hospitalized when 17 days old because she was having difficulty breathing. A report on Nicole's pediatric history and physical examination states that Nicole experienced periods of cyanosis at that time and that she had developed a heart murmur. The report also describes appellant's

also became depressed, according to the evidence, while pregnant with Garret. Deborah Gette, a close church friend, testified that she had two long telephone conversations with appellant a few days before Garret was born. At that time, appellant expressed concern over her depression, telling Ms. Gette that she was afraid that what happened with Nicole would happen with the new baby.[3] The evidence demonstrates that appellant continued to be depressed after Garret's birth, appellant's doctor having ordered her to take medication for that depression.

The evidence presented at sentencing concentrated on appellant's mental condition at the time she murdered Garret as well as appellant's prognosis for the future. Dr. Sadoff, an expert witness for appellant, testified that he believed appellant had "dissociated"[4] at the time of Garret's death, and characterized appellant's dissociation as "somewhere towards the pathological or abnormal as an atypical association nearing or approaching multiple personality...." N.T. 10/25/85, 15. Dr. Sadoff thought that the hypnosis confirmed appellant's dissociation, stating that it also allowed appellant an opportunity to express information concerning Garret's death that she had repressed. Dr. Sadoff further testified that he believed appellant required

condition, however, indicating that appellant "began to claim that she had held the baby's nose to cause it to die and that she wanted to return to a household that would include just she and her husband." The report notes that appellant became extremely depressed and was admitted to DuBois Hospital at that time for psychiatric support, concluding that the incident exacerbated an existing postpartum depression.

3. According to Ms. Gette's testimony, appellant told her that when she had had Nicole, she had wished that she had not had a baby and that things would return to the way they were prior to Nicole's birth. Appellant also stated that she could not be left alone with Nicole at that time because she was afraid she was going to kill her. Ms. Gette noted, however, that appellant did not mention actually trying to kill Nicole. N.T. 10/25/85, 98.

4. Dr. Sadoff defined a dissociative reaction as the mental condition which results when a person dissociates his intellect from his feelings and explained that such reactions run a continuum from normal dissociations such as everday distractions and sleepwalking to abnormal dissociations as where one has a multiple personality. N.T. 10/25/85, 14–15.

comprehensive psychiatric treatment, preferably as an out-patient, as he did not think appellant would receive adequate therapy on an inpatient basis. He stated that he did not believe appellant represented a risk to her daughter Nicole, indicating that, in his opinion, appellant did not do anything to harm Nicole in 1980. *See* footnote 2.

Dr. Stephen Ragusea testified for the Commonwealth. Dr. Ragusea expressed his opinion that appellant was mentally ill but indicated that there was no evidence that she was actually psychotic at the time of the crime. Having reviewed a videotape of the hypnotic session, Dr. Ragusea found the session to be flawed and concluded that the tape contained no evidence that appellant was a multiple personality or that appellant had experienced a dissociative reaction. Concerning the future, Dr. Ragusea remarked that, given that appellant had a history of family depressions and had herself suffered major depressions, "we are likely to see long periods when (appellant) will probably function fine, punctuated by periods when she will not. During those periods wherein she does not function well I think we have to make sure that people don't get hurt as a result of her problem." N.T. 10/25/85, 77. Dr. Ragusea concluded that appellant had a profound psychological problem as well as a behavioral problem (in that she killed a small child), which together called for intensive inpatient treatment.

Appellant presents the following questions for our review: (1) Whether a mother's psychiatric condition is necessarily a "substantial ground tending to excuse ... (her) criminal conduct" under 42 Pa.C.S. Sec. 9722(4) where she has killed her newborn baby during a psychotic postpartum depression of sufficient severity to support a plea of "guilty but mentally ill" and, whether appellant's prior counsel were therefore ineffective for failing to include this question in their motion to modify sentence; (2) whether the sentencing court abused its discretion in ruling that the aggravating factors in this case balanced out the mitigating factors, including substantial mental illness; and (3) whether appellant's prior counsel were ineffective in representing

appellant at sentencing due to their failure to familiarize themselves with and present the known scientific facts concerning atypical dissociative reactions in postpartum psychosis.

■■■ Preliminarily, we observe that appellant's second issue, which contests a discretionary aspect of the trial court's sentence, was neither raised at sentencing, nor included in a motion to modify sentence. Appellant did file a "Petition to Amend Sentence," which the trial court treated as a motion to modify sentence filed in accordance with Pa.R.Crim.P. 1410. That petition, however, merely requested the trial court to reconsider its sentence in light of psychiatric and psychological reports from Dr. Joseph Silverman which had not been available at the time of sentencing. Importantly, appellant did not raise, either in the petition or at the hearing on the petition, the allegation which she now asserts with respect to her second issue, i.e., that the trial court abused its discretion in ruling that the aggravating factors in this case balanced out the mitigating factors. As a result, appellant's second issue has not been preserved for our review.[5] *Commonwealth v. Duden*, 326

5. In the interest of judicial economy, we note that, in any event, appellant's second issue is without merit. Sentencing is a matter within the sound discretion of the trial court. *Commonwealth v. Simpson*, 353 Pa.Super. 474, 510 A.2d 760 (1986), *allocatur denied*, 514 Pa. 624, 522 A.2d 49 (1987). The sentence imposed is normally left undisturbed on appeal because the trial court is in a far better position to weigh the factors involved in such a decision. *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976). We have reviewed the record and are satisfied that the trial court adequately discharged its sentencing responsibilities as set forth in the Sentencing Code, 42 Pa.C.S. Sec. 9701 *et seq.* The sentence imposed falls within the standard range of the sentencing guidelines. Moreover, the record shows that the trial court considered and evaluated all of the relevant factors present in this case, including the mitigating factors cited by appellant. As the trial court correctly noted, however, it had to balance what appellant required in light of her mental illness with what the law and society required. Importantly, nothing in our statutory or case law mandates, as appellant suggests, that a defendant who suffers an atypical dissociative episode at the time of the crime receive a sentence within the mitigated guideline range. Indeed, as discussed *infra*, our legislature has provided that a defendant whose plea of guilty but mentally ill is accepted under the provisions of 18 Pa.C.S. Sec. 314 may have any sentence imposed on him which may

Pa.Super. 73, 473 A.2d 614 (1984) (issue whether trial court considered improper factors in imposing sentence waived by defendant's failure to raise objection either at sentencing hearing or in petition to modify sentence).

■ We now address the merits of appellant's first and third issues, both involving claims of ineffective assistance of counsel. When confronted with an allegation of ineffectiveness, we first ascertain whether the underlying issue is of arguable merit. *Commonwealth v. Buehl,* 510 Pa. 363, 508 A.2d 1167 (1986). If so, we then consider whether the course chosen by trial counsel had some reasonable basis designed to effectuate his client's interests. *Id.; Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297. Finally, we determine whether appellant established that he was prejudiced by the ineffectiveness. *Commonwealth v. Pierce,* 527 A.2d 973 (Pa.1987); *Commonwealth v. Buehl, supra; Commonwealth v. Verdekal,* 351 Pa.Super. 412, 506 A.2d 415 (1986). Significantly, once we conclude that the underlying issue is without arguable merit or that counsel's actions had a reasonable basis designed to effectuate his client's interests, our inquiry is at an end.

Appellant's first ineffectiveness claim concerns the trial court's findings at sentencing that, at the time of the offense, appellant had suffered a dissociative reaction caused by the birth of her second child and that, nevertheless, "there was no explanation tending to excuse or justify (appellant's) actions." N.T. 10/25/85, 131. Appellant argues on appeal that the latter finding, made by the trial court in considering the propriety of a sentence of probation, *see* 42 Pa.C.S. Sec. 9722, was erroneous. The level of mental illness which supports a plea of guilty but mentally ill (here a dissociative episode), appellant suggests, neces-

lawfully be imposed on any defendant convicted of the same offense. 42 Pa.C.S. Sec. 9727(a). As our Supreme Court has recognized, mental illness alone cannot absolve a defendant from criminal responsibility. *Commonwealth v. Tempest,* 496 Pa. 436, 437 A.2d 952 (1981). For these reasons, we cannot conclude that the trial court abused its discretion in balancing the factors present in this case.

sarily requires a finding that there were substantial grounds tending to excuse the offender's conduct under 42 Pa.C.S. Sec. 9722(4). Appellant concludes that, because the trial court did not find substantial grounds favoring probation under that provision, the court based its sentence in part on an error of law and that, consequently, her prior counsel were ineffective in their failure to raise this error in their motion to modify sentence.

■ Upon review, we find that the underlying claim of trial court error is without arguable merit. We conclude specifically that a mental condition which supports a plea of guilty but mentally ill does not as a matter of law constitute a substantial ground tending to excuse the criminal conduct under 42 Pa.C.S. Sec. 9722. Rather, we find that such a determination depends upon the facts of each case.

Appellant cites 18 Pa.C.S. Sec. 314 of the Crimes Code on offenders who are found guilty but mentally ill and 42 Pa.C.S. Sec. 9727 of the Sentencing Code on the disposition of such offenders, in support of her contention otherwise. We do not agree with appellant's interpretation of these statutory provisions. The excuse provision is one of twelve grounds set forth in 42 Pa.C.S. Sec. 9722 which, "while not controlling the discretion of the trial court," is to be "accorded weight in favor of an order of probation." 42 Pa.C.S. Sec. 9722. Although Section 9722 includes the excuse provision as a ground favoring probation, it mentions nothing relating that provision to the sentencing of persons who have been found or who have pleaded guilty but mentally ill.

In contrast, 42 Pa.C.S. Sec. 9727, which was enacted at the same time as 18 Pa.C.S. Sec. 314, specifically addresses the disposition of defendants found guilty but mentally ill or whose plea of guilty but mentally ill has been accepted under the provisions of 18 Pa.C.S. Sec. 314, providing that such defendants "may have any sentence imposed on (them) which may lawfully be imposed on any defendant convicted of the same offense." 42 Pa.C.S. Sec. 9727. Section 9727 continues, requiring that, before imposing sentence, the

sentencing court "hear testimony and make a finding on the issue of whether the defendant at the time of sentencing is severely mentally disabled and in need of treatment pursuant to the provisions of the ... 'Mental Health Procedures Act.'" *Id.* The section then prescribes the action to be taken for offenders who are severely mentally disabled and in need of treatment and concludes with a provision allowing the court, in cases where an offender who is found guilty but mentally ill is placed on probation, to make treatment a condition of probation.

Importantly, as the Commonwealth points out, despite this comprehensive attention to the problem of mentally ill offenders, nowhere did our legislature provide that a finding of mental illness sufficient to support a guilty plea under 18 Pa.C.S. Sec. 314 requires that the sentencing court find a substantial ground tending to excuse the defendant's conduct under 42 Pa.C.S. Sec. 9722. Indeed, to the contrary, Section 9727(a) allows a trial court to reject a sentence of probation and impose a sentence of total confinement on defendants who have been found to be mentally ill under the provisions of 18 Pa.C.S. Sec. 314.[6] For these reasons, we conclude that a plea of guilty but mentally ill under 18 Pa.C.S. Sec. 314 does not require a finding in favor of probation under 42 Pa.C.S. Sec. 9722(4) in every case.

We now address whether the trial court erred when it found no explanation tending to excuse or justify appellant's conduct in this case. After a careful review of the record, we conclude that it did not. As appellant notes in her brief, the trial court did state at sentencing that appellant's mental illness was brought on by an atypical dissociative episode. According to sections of *The Diagnosis and Statistical Manual* (D.S.M. III) (American Psychiatric Association, 1980), appended to Dr. Ragusea's report to the sentencing court,

**6.** This conclusion assumes that total confinement may lawfully be imposed on any defendant convicted of the same offense. *See* 42 Pa.C.S. Sec. 9727(a).

(t)he essential feature (of dissociative disorders) is a sudden, temporary alteration in the normally integrative functions of consciousness, identity, or motor behavior. If the alteration occurs in consciousness, important personal events cannot be recalled. If it occurs in identity, either the individual's customary identity is temporarily forgotten and a new identity is assumed, or the customary feeling of one's own reality is lost and replaced by a feeling of unreality. If the alteration occurs in motor behavior, there is also a concurrent disturbance in consciousness or identity, as in the wandering that occurs during a Psychogenic Fugue.

*Id.* Specific dissociative disorders include psychogenic amnesia, psychogenic fugue, multiple personality and depersonalization disorder. *Id.* Atypical dissociative disorder, however, is defined as

... a residual category to be used for individuals who appear to have a Dissociative Disorder but do not satisfy the criteria for a specific Dissociative Disorder. Examples include trance-like states, derealization unaccompanied by depersonalization, and those more prolonged dissociated states that may occur in persons who have been subjected to periods of prolonged and intense coercive persuasion (brainwashing, thought reform, and indoctrination while the captive of terrorists or cultists).

*Id.* According to this literature then, "atypical dissociative disorder" lacks precise definition and, in fact, includes any one of several different mental states. Indeed, the experts who testified and submitted reports in this case presented conflicting views as to the extent to which appellant dissociated as well as the nature of that dissociation at the time she murdered Garret.[7] It was therefore for the trial court to resolve any conflicts and to decide what weight the

7. Dr. Martin Orne stated in his report, for example, that, although there could have been a dissociation, there was no convincing evidence showing a multiple personality or even a profound dissociative reaction, while Dr. Sadoff testified at sentencing that he believed appellant had dissociated and that her dissociation approached the pathological or abnormal, nearing a multiple personality.

610

different views should be given. *Commonwealth v. Whitfield*, 475 Pa. 297, 300–302, 380 A.2d 362, 364–365 (1977) ("Psychiatric testimony, like any other evidence, is for the trier of fact to consider and to determine what weight it should be given.").

■ We observe that, although indicating that appellant had suffered an atypical dissociative reaction, the sentencing court found that appellant was aware at that time that her conduct would cause serious harm. Given this finding, as well as the experts' disagreement on appellant's dissociation, we conclude that the trial court did not err when it found that appellant's mental condition did not constitute substantial grounds tending to excuse her conduct.

We note further that a sentencing court's determination under 42 Pa.C.S. Sec. 9722(4) involves merely one factor to be considered in deciding the more comprehensive question of the propriety of a sentence of probation versus a sentence of partial or total confinement. The latter decision is left to the sound discretion of the sentencing court,[8] which, we conclude, has not been abused in this case. Importantly, the record indicates that the sentencing court carefully considered the relevant and appropriate factors, including appellant's mental illness, in deciding that it must reject a sentence of probation and impose a sentence of total confinement. *See* 42 Pa.C.S. Sec. 9722 and 42 Pa.C.S. Sec. 9725. In fact, the record shows that the court's focus in rejecting probation was not appellant's mental condition at the time of the murder, but rather the future undue risk the court believed appellant represented as a result of her current mental illness.

For these reasons, appellant's claim of trial court error is without arguable merit and her prior counsel, therefore, were not ineffective in failing to raise it.

8. *Commonwealth v. Scarborough*, 313 Pa.Super. 521, 460 A.2d 310 (1983) (imposition of a proper sentence is a matter committed to the sound discretion of the trial court); *Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979).

■ Appellant's second claim of ineffectiveness relates to her representation at sentencing. Appellant observes that her prior counsel specifically argued at sentencing that the facilities available in prison were not adequate to treat appellant and to prevent a recurrence. In so arguing, appellant contends, defense counsel implied that a recurrence was possible. As a result, appellant continues, defense counsel endorsed the Commonwealth's position that appellant poses a future danger to other persons and, consequently, should receive a long sentence. Appellant asserts that certain scientific literature supports her contention to the contrary, i.e., that a recurrence of her dissociative disorder is impossible and that therefore, she does not pose a future danger to other persons. Appellant claims her prior counsel were ineffective for failing to discover and utilize this information to argue for a shorter sentence.

After careful examination of the record, we find that the issue underlying appellant's claim lacks arguable merit and conclude that, in any event, the course chosen by defense counsel had a reasonable basis designed to effectuate appellant's interests. The scientific material set forth in appellant's brief addresses dissociative syndromes found in puerperal patients, i.e., women experiencing childbirth. Appellant quotes from one treatise which compares puerperal patients with dissociative syndromes to patients who are schizophrenic.

A final difference is that with treatment—and sometimes without it—a florid dissociative process will suddenly clear, the patient will feel well, will have little or no recollection of her psychosis, and will never again have a recurrence. While not unheard of in nonpuerperal schizophrenia, it is much less common than in postpartum dissociative syndromes.

J. Hamilton, *Postpartum Psychiatric Problems,* 67–68 (1962). Appellant contends that this observation remains valid today, citing additional literature on postpartum psychiatric disorders and quoting one source as stating that there is a general consensus that puerperal psychoses have

an excellent prognosis. For the reasons which follow, we do not find appellant's prior counsel ineffective for failing to present this information.

We observe initially that appellant's prior counsel did present evidence indicating that the risk that appellant would have a recurrence was low. First, appellant's counsel submitted evidence disclosing that appellant had undergone a tubal ligation following Garret's birth. Thus, the sentencing court was well aware of the fact that appellant could no longer have children and, therefore, could not become depressed in connection with the birth of another child. Second, appellant's prior counsel elicited testimony from Dr. Sadoff regarding the risk to Nicole. Dr. Sadoff stated specifically that he saw no need to incarcerate appellant in order to protect her daughter, as he believed Nicole would not be at risk were appellant to be treated on an outpatient basis. Finally, in their petition to amend sentence, defense counsel requested reconsideration based upon the most recent psychological reports of Dr. Silverman, appellant's treating psychiatrist immediately prior to her incarceration. In that report, Dr. Silverman stated that appellant's "dissociation in the service of a depression" was "highly unlikely to occur again except in connection with a depression, used here in the sense of a biochemical disturbance of the brain, accompanied by characteristic clinical symptoms." Dr. Silverman also indicated in that report that the danger to Nicole would be negligible were appellant to continue to live with her.[9] In view of the foregoing, we find that appellant's prior counsel sufficiently alerted the sentencing court to the evidence supporting the view that a recurrence was unlikely and that appellant therefore did not pose a risk to others.

We note additionally that all of the experts in this case, including those testifying and submitting reports on appellant's behalf, believed that appellant required some kind of

9. We note that the sentencing court read and considered this report and concluded that it contained nothing which would require the court to reconsider its sentence.

treatment.[10]  In the face of these views, we believe it was within the realm of sound strategy for defense counsel to focus on appellant's need for treatment and the inadequacy of the facilities available for such treatment were appellant to be incarcerated.  Significantly, in mentioning the possibility of a recurrence, appellant's prior counsel were not arguing for a long sentence, but rather, for a sentence which would enable appellant to receive the therapy her doctors believe she required.  Accordingly, we conclude that appellant's claim satisfies neither the arguable merit nor the reasonable basis prongs of the ineffectiveness test. Having disposed of each of appellant's claims and having found no grounds for relief, we affirm.

Judgment of sentence affirmed.

WIEAND, J., concurs in the result.

---

10. Indeed, as Dr. Ragusea noted in his report and at sentencing, assuming that depression was the precipitating event in this case, depression may result from many causes other than childbirth.