COMMONWEALTH of Pennsylvania,
Appellee

v.

Duane E. BRADY, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 25, 1999.

Filed Nov. 15, 1999.

Duane E. Brady, appellant, pro se.

Daniel W. Stern, Asst. Dist. Atty., Harrisburg, for the Com, appellee.

Before KELLY, MUSMANNO, and MONTEMURO*, JJ.

KELLY, J.:

¶ 1 In this appeal, we must determine whether Appellant, Duane Brady, is entitled to relief pursuant to the Post Conviction Relief Act.[1] Specifically, we must decide whether Appellant is entitled to a new trial on the basis of trial/appellate counsel's ineffectiveness in failing to address issues related to the admission of a co-defendant's statement inculpating Appellant in the crimes charged. We hold that counsel rendered ineffective assistance when he permitted the statement inculpating Appellant to be admitted at trial without objection or request for a cautionary instruction. We further hold that the hearsay nature of the statement was inherently prejudicial and the prejudice was not cured when the declarant of the statement later testified. Accordingly, we reverse the order denying Appellant PCRA relief and remand the matter to the trial court for a new trial.

¶ 2 The relevant facts and procedural history of this case are as follows. In late October 1995, Appellant's co-defendant, Daniel Mutzabaugh, along with Daniel's cousin, Chris Mutzabaugh, Luther Holly, and several others, were drinking beer in a cabin in rural Perry County. Appellant, looking for Holly, arrived just as the beer supply was depleted. Daniel allegedly suggested to his cousin Chris that the two of them break into a nearby cabin, where Daniel knew there was more alcohol. Chris later testified that he thought Daniel was joking. Daniel then asked Appellant for a ride to a friend's house, and Appellant agreed. There was no testimony at trial indicating that Appellant knew Daniel intended to steal liquor. Shortly thereafter, as Appellant and Daniel were driving down a secluded road, Appellant's car had a flat tire. By one account, Appellant remained with the car while Daniel left, returning later with a case of beer and someone to tow the car. At trial, the Commonwealth successfully argued that together, Daniel and Appellant broke into a nearby cabin, stole beer and liquor, transported it in a stolen sleeping bag, had the flat tire on their way back to their cabin, and then procured a tow. In both accounts, Appellant and Daniel eventually returned to the cabin where the alcohol was consumed.

¶ 3 The tow operator confirmed that he had towed a vehicle late one night in October and that Daniel was the person who had procured his assistance. The tow operator could not, however, identify Daniel's companion and was unable to confirm the presence of liquor in the vehicle.

¶ 4 Based on an early November phone call from Daniel's cousin, Chris, Pennsylvania Police Trooper Rodney D. Anderson investigated the incident.[2] He discovered that a cabin had indeed been robbed of beer and liquor, but that the door had already been repaired. Therefore, the

---

* Retired Justice assigned to the Superior Court.

1. 42 Pa.C.S.A. §§ 9541–9546.

2. Trooper Anderson knew Daniel's cousin, Chris, from an unrelated matter.

only physical evidence remaining was a sleeping bag, in Chris' possession. Trooper Anderson did not know of the sleeping bag's existence until December 16, when he went to Chris' residence to serve him a subpoena to appear at the preliminary hearing. On that date, Chris turned the sleeping bag over to Trooper Anderson. Neither Chris nor Trooper Anderson testified that any active/knowing involvement in the burglary on the part of Appellant had been discussed in either their early November or mid-December conversations.

¶ 5 Meanwhile, Daniel was being held in a Dauphin County prison pending the preliminary hearing. On December 18, Trooper Anderson arrived at the prison to transport Daniel to the preliminary hearing. According to Trooper Anderson, he *Mirandized*[3] Daniel during the half-hour trip and began to probe. During that transportation, Daniel allegedly verified Chris' account of the incident, confessed to his involvement, and implicated Appellant.

¶ 6 Appellant and Daniel were both charged with burglary, conspiracy to commit burglary, theft by unlawful taking, receiving stolen property, conspiracy to commit theft, and criminal mischief. Appellant and his co-defendant Daniel proceeded to a joint trial and were represented by separate counsel. At trial, Trooper Anderson testified for the Commonwealth regarding Daniel's alleged inculpatory statement.[4] The statement was admitted as substantive evidence against both Daniel and Appellant, without objection, redaction or request for a limiting instruction.

¶ 7 Later, during the case for the defense, Daniel took the stand. He vigorously denied that he had ever made the statement to Trooper Anderson or verified his cousin's account of the incident. Daniel also rejected Appellant's alleged involvement in the criminal incident, testifying in Appellant's favor.

¶ 8 Following trial, the trial judge convicted Appellant of criminal mischief. The jury convicted Appellant of the remaining charges. On April 26, 1996 Appellant was sentenced for receiving stolen property, conspiracy, and theft, to a term of imprisonment of one to two years, and four to ten years' imprisonment for burglary. On May 6, 1996, Appellant filed a motion for reconsideration of sentence. By order dated the same day, the court vacated his sentence for conspiracy to commit burglary and affirmed the other judgments of sentence.

¶ 9 Appellant's court-appointed counsel represented him at trial and on direct appeal. On direct appeal, Appellant challenged the probable cause supporting his arrest, the sufficiency and weight of the evidence, and the calculation of his sentence. This Court affirmed Appellant's judgment of sentence on April 8, 1997. *See Commonwealth v. Brady*, 698 A.2d 661 (Pa.Super.1997).

¶ 10 The trial court extended Appellant's leave to continue *in forma pauperis*. Appellant proceeded *pro se* in this, his first PCRA petition, timely filed on August 20, 1997. In his petition, Appellant raised claims of ineffectiveness of counsel. Appellant specifically noted in his Motion for Post Conviction Collateral Relief that he did not want another lawyer appointed to represent him. Appellant's petition was

---

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. The testimony at issue states: "[Daniel] related to me that Chris was right and what he had said was completely true and that him [sic] and [Appellant] had broken into the cab-

in, had wrapped all the alcoholic beverages up into the sleeping bag so they could carry them out. And once they got back to the vehicle and were leaving, they had a flat tire." (N.T. Trial, 4/19/96, at 92–93.)

subsequently amended, but ultimately dismissed without an evidentiary hearing. Appellant timely filed this appeal.

Appellant raises the following issues for our review.

I. WHETHER THE [TRIAL] COURT ERRED AND/OR ABUSED IT'S [SIC] DISCRETION WHEN IT DENIED APPELLANT'S P.C.R.A. PETITION WITHOUT AN EVIDENTIARY HEARING IN THE CONTEXT OF INEFFECTIVE ASSISTANCE OF COUNSEL?

II. WHETHER THE [TRIAL] COURT ERRED IN DENYING APPELLANT'S PETITION FOR RELIEF UNDER THE PENNSYLVANIA POST-CONVICTION RELIEF ACT WHERE, UNDER THE CIRCUMSTANCES OF THIS CASE, THE FAILURE OF TRIAL COUNSEL TO; (1) LIMIT THE USE OF CO-DEFENDANT DANIEL MUTZABAUGH'S STATEMENT THROUGH AVAILABLE PRE-TRIAL MOTIONS, (2) TO OBJECT TO THE OUT-OF-COURT CONFESSION OF CO-DEFENDANT THAT WAS USED AGAINST THE APPELLANT AS SUBSTANTIVE EVIDENCE, ON THE BASIS OF HEARSAY, (3) TO REQUEST A CAUTIONARY INSTRUCTION TO THE JURY WHEN THE OUT-OF-COURT CONFESSION BY CO-DEFENDANT WAS INTRODUCED AS SUBSTANTIVE EVIDENCE AGAINST APPELLANT, CONSTITUTING INEFFECTIVENESS OF COUNSEL UNDER THE SIX [SIC] AMENDMENT OF THE UNITED STATES CONSTITUTION AND PENNSYLVANIA CONSTITUTION AT ARTICLE 1 SECTION 9 WHICH SO UNDERMINED THE TRUTH-DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GUILT OR INNOCENSE [SIC] COULD HAVE TAKEN PLACE?

(Appellant's Brief at 3).

■ ¶ 11 Preliminarily, we note that Pennsylvania law provides an indigent petitioner with court-appointed counsel on his first petition for post-conviction relief, regardless of the merits of the claims raised. Pa.R.Crim.P. 1504; *Commonwealth v. Luckett*, 700 A.2d 1014 (Pa.Super.1997); *Commonwealth v. Lindsey*, 455 Pa.Super. 228, 687 A.2d 1144 (1996); *Commonwealth v. Peterson*, 453 Pa.Super. 271, 683 A.2d 908 (1996). Pennsylvania law also expressly recognizes the right to proceed without the assistance of counsel. *Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998) (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)) (holding that the right to proceed without counsel is guaranteed by the sixth amendment to the Federal Constitution when a valid waiver is made) and *Commonwealth v. Rogers*, 537 Pa. 581, 645 A.2d 223 (1994) (recognizing that a criminal defendant or appellant has the right to proceed *pro se* at trial and through appellate proceedings). *See also* Pennsylvania Rule of Criminal Procedure 318(a).

■ ¶ 12 Nevertheless, mere execution of a waiver of counsel form, without more, is insufficient to establish a valid waiver. *Commonwealth ex rel. McCray v. Rundle*, 415 Pa. 65, 202 A.2d 303 (1964); *Commonwealth ex rel. O'Lock v. Rundle*, 415 Pa. 515, 204 A.2d 439 (1964). "When a waiver of counsel is sought at the post-conviction and appellate stages, an on-the-

record determination should be made that the waiver is a knowing, intelligent, and voluntary one." *Grazier, supra.*

■ ¶ 13 In the instant case, Appellant obtained permission to continue his *in forma pauperis* status for purposes of his PCRA petition. He specifically requested that no counsel be appointed for the purpose of filing his first PCRA petition. In a letter dated June 8, 1997, Appellant informed trial/appellate counsel of his intention to proceed *pro se.* A copy of this letter was sent to the judge presiding in this case. Although there is no on-the-record colloquy, Appellant has adequately demonstrated a valid waiver of counsel through his adamant statement against appointment of counsel through his PCRA petition, his correspondence to counsel and the court, and his subsequent *pro se* appeal. *See Grazier, supra ; Rundle, supra.* Thus, we will review his issues.

■ ¶ 14 Our scope of review when examining a PCRA court's denial of relief is limited to determining whether the court's findings are supported by the record and the order is otherwise free of legal error. *Commonwealth v. Morales,* 549 Pa. 400, 407, 701 A.2d 516, 520 (1997); *Commonwealth v. Carbone,* 707 A.2d 1145, 1148 (Pa.Super.1998). We will not disturb findings that are supported by the record. *Commonwealth v. Yager,* 454 Pa.Super. 428, 685 A.2d 1000, 1003 (1996) (*en banc* ), *appeal denied,* 549 Pa. 716, 701 A.2d 577 (1997). Additionally, there is no absolute right to a hearing pursuant to the Post Conviction Relief Act (PCRA). *Commonwealth v. Neal,* 713 A.2d 657, 660 (Pa.Super.1998) (citations omitted). The post-conviction court may elect to dismiss a petition if it has thoroughly reviewed the claims presented and determined that they are utterly without support in the record. *Id.*

■ ¶ 15 The Pennsylvania Supreme Court's test for demonstrating ineffective assistance of counsel in a PCRA petition is as follows:

> The petitioner must still show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. This requires the petitioner to show: (1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Kimball,* 555 Pa. 299, 312, 724 A.2d 326, 333 (1999). The *Kimball* Court also held that the PCRA does not impose a more stringent prejudice requirement than that applicable to direct appeals. *Id.*

■ ¶ 16 Further, "[o]n appellate review, counsel is presumed to be effective, *Commonwealth v. Pierce,* 515 Pa. 153, 159, 527 A.2d 973, 975 (1987), and the burden rests with appellant to overcome that presumption. *Commonwealth v. Jones,* 298 Pa.Super. 199, 205, 444 A.2d 729, 732 (1982)." *Commonwealth v. Pirela,* 398 Pa.Super. 76, 580 A.2d 848, 850 (1990), *appeal denied,* 527 Pa. 672, 594 A.2d 658 (1991). For example, trial counsel's failure to object to the admission of incriminating testimony, or to request a cautionary instruction, presents a colorable claim of ineffectiveness, especially when such avenues are available to trial counsel. *Commonwealth v. Gabrielson,* 370 Pa.Super. 271, 536 A.2d 401 (1988), *appeal denied,* 518 Pa. 636, 542 A.2d 1365 (1988).

¶ 17 Appellant argues that trial counsel was ineffective for failing to use available pretrial motions to prevent Daniel's statement from admission at trial against Ap-

pellant.[5] Appellant also claims that trial counsel was ineffective for failing to have Daniel's statement redacted or object to the trial testimony regarding Daniel's statement as hearsay or request a cautionary instruction to the jury, once the statement was admitted as substantive evidence. Appellant concludes that the trial court erred when it denied his PCRA petition for relief. Under the circumstances of this case, we agree.

¶ 18 With respect to counsel's alleged ineffectiveness in failing to preserve Appellant's confrontation rights through suppression or redaction, the Pennsylvania Supreme Court has stated:

> [I]n *Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), the United States Supreme Court held that where a co-defendant in a state court trial took the stand at a joint trial in his own defense, and denied making an alleged out-of-court statement implicating defendant, and proceeded to testify favorably to defendant concerning the underlying facts, the defendant was denied no rights under the Sixth or Fourteenth Amendments, despite the contention that effective confrontation was possible only if co-defendant had affirmed the statement. Indeed, it was determined that the co-defendant's testimony at trial was more favorable to defendant than any that cross-examination by counsel could possibly have produced. 402 U.S. at 629, 91 S.Ct. at 1727, 29 L.Ed.2d at 228. *Bruton* [*v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ], was found inapplicable.

*Commonwealth v. Baker*, 511 Pa. 1, 15–16, 511 A.2d 777, 785 (1986). In the instant case, Daniel, the alleged declarant of the inculpatory statement, later took the stand at trial and testified favorably to Appellant. Accordingly, we agree with the Commonwealth that, pursuant to *Baker*, Appellant's constitutional arguments expired. However, our inquiry does not end, because the question now becomes whether Daniel's favorable testimony also cures counsel's failure to object to the statement as hearsay and request a limiting instruction.

¶ 19 Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. *Commonwealth v. Ellis*, 700 A.2d 948, 960 (Pa.Super.1997), *appeal denied*, 556 Pa. 671, 727 A.2d 127 (1998). As a general rule, hearsay is inadmissible because it is inherently unreliable. *Williamson v. United States*, 512 U.S. 594, 598, 114 S.Ct. 2431, 2434, 129 L.Ed.2d 476, 482 (1994). Thus, hearsay is inadmissible at trial, unless it falls into one of the exceptions to the hearsay rule. *Commonwealth v. Bean*, 450 Pa.Super. 574, 677 A.2d 842, 844 (1996) (citation omitted).

¶ 20 To be admissible, hearsay statements must bear "indicia of reliability." *Commonwealth v. Kravontka*, 384 Pa.Super. 346, 558 A.2d 865 (1989) (citing *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293, 301 (1972).) Recently, in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), a Supreme Court plurality held that a confession, which inculpates an accomplice is not a "firmly rooted" hearsay exception as a "statement against penal interest" where the circumstances under which the statement was given, custodial interrogation, were not so trustworthy as to ensure its reliability. *See also Commonwealth v. Grimes*, 436 Pa.Super. 535, 648 A.2d 538 (1994), *appeal quashed*, 543 Pa. 702, 670 A.2d 642 (1995) (citing *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992)) (holding prior inconsistent hearsay statements admissible for impeach-

---

5. Appellant's PCRA petition is the first opportunity to challenge his counsel's stewardship because Appellant's trial counsel was also his counsel on direct appeal. *See Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382 (1998) (repeating that the claim of ineffectiveness must be raised at earliest stage in proceedings at which counsel whose effectiveness is challenged no longer represents appellant).

ment purposes only, unless demonstrably reliable and trustworthy).

¶ 21 Due to its inherent untrustworthiness, an accomplice's statement is generally admissible in a joint trial as substantive evidence only against the declarant, and not against any other co-defendants. *Commonwealth v. Johnson,* 719 A.2d 778 (Pa.Super.1998), *appeal denied,* —— Pa. ——, 739 A.2d 1056 (1999). "[T]he trial judge must exercise extreme care that evidence admissible against one defendant is not improperly received against another." *Commonwealth v. Scarborough,* 313 Pa.Super. 521, 460 A.2d 310, 313 (1983). The trial court may accomplish this task by giving a limiting instruction in its charge to the jury, which cautions that a defendant's statement can be considered as evidence against him alone. *Commonwealth v. Lee,* 541 Pa. 260, 662 A.2d 645 (1995), *cert. denied,* 517 U.S. 1211, 116 S.Ct. 1831, 134 L.Ed.2d 935, (1996). *See also Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987).

> In *Crawford v. United States,* 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed. 465 (1909), this Court stated that even when an alleged accomplice testifies, his confession that "incriminate[s] himself together with defendant...ought to be received with suspicion, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses." *Id.* at 204, 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed. 465.

*Lilly, supra* at ——, 119 S.Ct. at 1898, 144 L.Ed.2d at ——.

¶ 22 Nearly thirty years ago, the United States Supreme Court cautioned against the assumption that there is a complete congruence of the hearsay rules and the Confrontation Clause, explaining as follows:

> While it may be readily conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.

*California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489, 495–96, (1970) (citations omitted) (footnote omitted). The Court commented further:

> [v]iewed historically...there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination. *Id.* at 158[, 90 S.Ct. at 1935], 26 L.Ed[.]2d at 497. Moreover, "where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." *Id.* at 162[, 90 S.Ct. at 1937], 26 L.Ed 2d at 499. This is true, of course, even though the declarant's out-of-court statement is hearsay as to the defendant, so that its admission against him, in the absence of a cautionary instruction, would be reversible error under state law.

*Nelson, supra* at 626–27, 91 S.Ct. at 1725–26, 29 L.Ed.2d at 227 (1971) (quoting *Green, supra* ) (emphasis added).

¶ 23 In the instant case, the Commonwealth was allowed to admit Daniel's hearsay statement as substantive evi-

dence against Appellant. Appellant's counsel had, at his disposal, several options to limit the use of co-defendant's prejudicial statement against Appellant. Appellant's counsel made no pretrial motion to limit the use of Daniel's statement[6] as substantive evidence against Appellant.

¶ 24 Moreover, counsel failed to raise a standard hearsay objection to the admission of Daniel's out-of-court statement as substantive evidence against Appellant. Daniel's alleged confession, as relayed by Trooper Anderson, was inadmissible against Appellant as substantive evidence during the Commonwealth's case-in-chief. Daniel's statement against his own penal interest did not constitute a "firmly rooted" hearsay exception or exhibit any "particularized guarantees of trustworthiness" to render it admissible against Appellant. See Lilly, supra. Thus, as soon as this hearsay was relayed to the jury, counsel had no reasonable basis for his failure to object and request a cautionary instruction to the jury that Daniel's statement could be considered as evidence only against Daniel. See Lee, supra; Johnson, supra; Gabrielson, supra; Kimball, supra. The admission of Daniel's hearsay statement as substantive evidence against Appellant without a cautionary instruction, was error. See Nelson, supra; Lee, supra;

Johnson, supra; Scarborough, supra. Absent Daniel's statement, the Commonwealth's evidence against Appellant was slight.

¶ 25 Nevertheless, the Commonwealth insists that Appellant suffered no prejudice because counsel's alleged errors were rendered harmless when Daniel took the stand, repudiated the statement, and testified favorably on Appellant's behalf. See Baker, supra. Specifically, the Commonwealth claims that the inherent dangers of Daniel's hearsay statement were sufficiently minimized by virtue of (1) his oath; (2) the repudiation of the confession; (3) his denial of Appellant's involvement; (4) his awareness of the gravity of the proceedings; (5) the jury's ability to observe Daniel's demeanor; and (6) Appellant's right to cross-examine. See Williamson, supra; Baker, supra.

¶ 26 We note that the line of cases involving confrontation rights, upon which the Commonwealth relies, differs from the instant case in one crucial aspect. In each of the cases, the hearsay statements were immediately accompanied by a limiting instruction. See Nelson, supra at 625, 91 S.Ct. at 1725, 29 L.Ed.2d at 225; Baker, supra at 6, 511 A.2d at 780 (noting occurrence of sustained objection, limiting instruction and motion for a mistrial upon

6. Appellant's counsel filed a Motion to Dismiss Informations, which challenged probable cause to arrest Appellant. Counsel argued that the original tip provided by Chris was unreliable due to Chris' desire to deflect culpability from his own involvement in the burglary and/or to curry favor with regards to an unrelated criminal disposition. Counsel's unsuccessful Motion to Dismiss Informations did not constitute a suppression motion as to Daniel's statement, simply because the motion attacked the reliability of the tip.

Further, Daniel's counsel, Mr. Philpott, also filed a motion to suppress Daniel's statement. The record does not support, however, the Commonwealth's assertion that this motion was actually filed by both counsel. To the contrary, Mr. Philpott stated that the motion, which was based upon Trooper Anderson's alleged failure to give Miranda warnings, "only affects my client." (N.T. Trial, 4/19/96,

at 5.) Moreover, after Mr. Philpott's pretrial cross-examination of Trooper Anderson, the court asked Appellant's counsel, "You have nothing to do with this one, right?" (Id. at 16.) Appellant's counsel replied, "No, we have nothing to do with this, Your Honor." (Id.) Daniel's motion to suppress the statement on this basis was denied. Assuming Appellant's counsel considered Mr. Philpott's efforts dispositive of any suppression potential, such an assumption lacked reasonableness. See Kimball, supra. Mr. Philpott's motion was based upon failure to give Miranda warnings. With respect to Appellant, Daniel's statement constituted inadmissible hearsay evidence against Appellant, a co-defendant in a joint trial. See Johnson, supra. A proper motion on Appellant's behalf would have championed suppression under a wholly different argument.

hearsay testimony). Thus, we cannot agree that the opportunity to cross-examine Daniel provided an adequate cure for the prior prejudice suffered by Appellant when Daniel's hearsay statement was earlier admitted as substantive evidence against Appellant without objection or request for a cautionary instruction. In both *Nelson* and *Baker*, the immediate cautionary instruction coupled with the countervailing force of cross-examination theoretically balanced the defendant's rights against the prejudice he suffered by the admission of the hearsay statement. Here, no objection was made or instruction requested. Thus, we hold that counsel's failure to act on behalf of Appellant, when Daniel's hearsay statement was admitted against Appellant as substantive evidence in the Commonwealth's case, irreparably prejudiced Appellant's right to a fair trial, notwithstanding the eventual preservation of his confrontation rights. Appellant's trial counsel had no reasonable basis to forego the plethora of options available to him to preclude the statement's admission against Appellant or at least, mitigate its prejudicial effect. *See Kimball, supra* ; *Gabrielson, supra.* But for the omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different, because the statement was the only evidence that inexorably linked Appellant to the crime. *See Kimball, supra.*

¶ 27 Based upon the foregoing analysis, we hold that counsel rendered ineffective assistance when he permitted the statement, inculpating Appellant to be admitted at trial without objection or request for a cautionary instruction. We further hold that the hearsay nature of the statement was inherently prejudicial and the prejudice was not cured when the declarant of the statement later testified. Accordingly, we reverse the order denying Appellant PCRA relief and remand the matter to the trial court for a new trial.

¶ 28 Order reversed; case remanded for a new trial. Jurisdiction is relinquished.