418 A.2d 734
**COMMONWEALTH of Pennsylvania**

v.

**Larry BRINTON, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed Feb. 29, 1980.

Robert F. Pappano, Assistant Public Defender, Media, for appellant.

Guy A. Messick, Assistant District Attorney, Media, for Commonwealth, appellee.

Before CERCONE, President Judge, and WIEAND and LOUIK, JJ.*

WIEAND, Judge:

Larry Brinton was tried before a jury and found guilty of rape, involuntary deviate sexual intercourse, corrupting the morals of a minor, indecent assault, simple assault, criminal coercion and conspiracy. He appeals from that determination contending: (1) that the Commonwealth failed to bring him to trial within 180 days in violation of Pa.R.Crim.P. 1100; (2) that the trial court improperly restricted cross–examination of the victim; (3) the Commonwealth failed to prove jurisdiction in Delaware County; and (4) the court erred in refusing a directed verdict because of inconsistencies in the victim's testimony. We find no merit in these contentions and, therefore, affirm.

Linda Rappa left her home at approximately 1:00 o'clock, A.M., on May 28, 1977, to visit a girlfriend in Brookhaven.

---

\* Judge DONALD E. WIEAND is sitting by special designation. Judge MAURICE LOUIK of the Court of Common Pleas of Allegheny County, Pennsylvania is sitting by designation.

Finding her girlfriend not home, she continued to walk through Brookhaven until she met a man standing in front of a building. After speaking to the man for a brief period of time, she asked him for a ride to her boyfriend's house. When they reached 22nd and Edgemont Avenue, Ms. Rappa spotted a man named "Speed" (Daniel Brennan) with whom she was acquainted. "Speed" agreed to take her the rest of the way to her boyfriend's house, and she transferred to "Speed's" vehicle, where Billy Bradshaw and appellant were also present.

The group drove first to King Chevrolet in Chester, where appellant exited the car. Brennan and Bradshaw, together with Ms. Rappa, visited a store in Chester and then returned to King Chevrolet to meet appellant. They followed appellant, who was in another vehicle, to the Chester residence of a man known as "One Eye." Rappa asked to be taken to her boyfriend's home but was told that she would "have to wait." The four remained at "One Eye's" home for some time where, with others then present, they engaged in smoking DMT. When they left "One Eye's," Rappa now asked to be taken to her sister's house in Chester. Brinton, Brennan and Bradshaw refused.

While in the car, Rappa passed out. She awakened to find herself lying nude on a bed. Despite resistance, she was forcibly subjected to multiple sexual and deviate sexual acts by the three men. During the episode, she was beaten, choked, poked with scissors, burned with matches, and threatened with a gun.

When the assaults had been completed, the three men returned their victim to the car and threatened to take her into Philadelphia. She insisted upon going home. Brennan was dropped off after they had driven a short distance; and a short time later Rappa was able to escape from the car. She ran to a nearby house in Prospect Park where she related that she had been beaten, drugged and raped.

A criminal complaint was filed against appellant on May 29, 1977. The original Rule 1100 run date, therefore,

would have been November 25, 1977. Appellant, however, was not found and arrested until August 13, 1977. On November 16, 1977, the Commonwealth filed a petition to extend, and a hearing thereon was scheduled for December 2, 1977. On that day the hearing was continued. It was continued again on December 9, 1977. The hearing was held on December 16, 1977. Meanwhile, appellant has filed an application to dismiss, and this was heard at the same time. The hearing court found that the Commonwealth had exercised due diligence to find appellant but that he had been unavailable between May 29, 1977 and August 13, 1977. Trial commenced on December 19, 1977.[1]

Section (d)(1) of Rule 1100 provides:

"(d) In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney."

In order to avail itself of this exclusion, the Commonwealth was required to prove by a preponderance of the evidence that appellant's whereabouts were unknown and that due diligence was utilized in locating and apprehending appellant. *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977); *Commonwealth v. Hinton*, 269 Pa.Super. 43, 409 A.2d 54 (1979).

The record in the instant case confirms the lower court's finding that due diligence was exercised by the Commonwealth in locating and arresting appellant. Chief William Maitland of the Borough of Eddystone looked for appellant at his home in Eddystone, but was told by appellant's sister–in–law that appellant was not there. Chester police filed the arrest warrant information with the National Crime Index Center (NCIC) and sent copies to nearby Eddy-

---

1. The hearing judge also observed that it would do nothing to disturb an order entered on December 2, 1977, which granted the Commonwealth's petition for extension. This order apparently was entered in error. On the day of trial it was revoked. In view of the proper exclusion of the time between the signing of the complaint and appellant's arrest, we need not determine the effect, if any, of this order.

stone and Prospect Park where appellant had addresses listed. Chester police made periodic checks at the Brookhaven bowling alley, which Brinton was known to frequent. Following his arrest in Eddystone, appellant himself told police that he had been in Florida and had there been employed.

■ The Commonwealth is not required to exhaust every conceivable method of locating a defendant. The standard of due diligence demands only that reasonable efforts be undertaken. *Commonwealth v. Hinton,* supra; *Commonwealth v. Jones,* 256 Pa.Super. 366, 389 A.2d 1167 (1978). That standard was met in this case; and therefore, the delay prior to arrest was properly excluded. With the exclusion of this period, it is clear that appellant's trial was commenced within the time allowed therefor.

■ Appellant next claims that the trial court improperly refused to allow cross–examination of the victim concerning prior rape charges which she had brought and subsequently refused to prosecute. The scope of cross–examination is a matter within the sound discretion of the trial court, whose exercise thereof will not be reversed on appeal absent a clear abuse of discretion. *Commonwealth v. Sisco,* 484 Pa. 85, 398 A.2d 955 (1979); *Commonwealth v. Holland,* 480 Pa. 202, 389 A.2d 1026 (1978). In determining the scope of cross–examination the trial court may consider "whether the matter is collateral, whether the cross-examination would be likely to confuse or mislead the jury, and whether it would waste time." *Commonwealth v. Lee,* 262 Pa.Super. 280, 293, 396 A.2d 755, 761 (1978). The trial judge found that the proposed cross–examination had no relevancy, and refused to permit it. We find no abuse of discretion.

■ Although the victim testified that she did not know the location of the building in which she had been assaulted and raped, there is ample evidence to demonstrate that the Delaware County Court had jurisdiction of the offenses with which appellant was charged. It is clear that the conspiracy had its inception in Delaware County after the three men

had left "One Eye's" and when they refused to take the victim to her sister's home and took her instead to the place where the attacks occurred. It continued when the victim passed out in their automobile in Delaware County and until the victim was able to escape from the men in Prospect Park, also in Delaware County.

■ In *Commonwealth v. Creamer*, 236 Pa.Super. 168, 172, 345 A.2d 212, 214 (1975), this Court said: "It is well–established law in the Commonwealth that before a county assumes jurisdiction over a crime, some overt act must have occurred therein. *Commonwealth v. Tumolo*, 223 Pa.Super. 189, 299 A.2d 15 (1972), aff'd, 455 Pa. 424, 317 A.2d 295 (1974); *Commonwealth v. Simeone*, 222 Pa.Super. 376, 294 A.2d 921 (1972). Where a conspiracy is alleged, an overt act committed in a county by any one of the conspirators is sufficient for that county to assert jurisdiction over all. *Commonwealth v. Thomas*, 410 Pa. 160, 189 A.2d 255 (1963); *Commonwealth v. Simeone, supra.*

"The case law of the Commonwealth is replete with examples of a county's assertion of jurisdiction when some part of the criminal activity or conspiracy occurred therein. *See, e. g., Commonwealth v. Thomas, supra; Commonwealth v. Tumolo, supra; Commonwealth v. Marino*, 213 Pa.Super. 88, 245 A.2d 868 (1968), aff'd, 435 Pa. 245, 255 A.2d 911 (1969), cert. denied, 397 U.S. 1077, [90 S.Ct. 1526, 25 L.Ed.2d 811,] reh. denied, 398 U.S. 945 [,90 S.Ct. 1849, 26 L.Ed.2d 284] (1970); *Commonwealth v. Petrosky*, 194 Pa.Super. 94, 166 A.2d 682 (1960); *Commonwealth v. Prep*, 186 Pa.Super. 442, 142 A.2d 460 (1958); *Commonwealth v. Mezick*, 147 Pa.Super. 410, 24 A.2d 762 (1942)."

■ Appellant's final argument is totally without merit. Conflicts in the evidence, including minor inconsistencies in the testimony of the victim, were for the factfinder. *Commonwealth v. Bryant*, 247 Pa.Super. 460, 372 A.2d 917 (1977). There is in this record no inconsistency requiring the disturbance of the jury's verdict.

Judgment of sentence affirmed.

LOUIK, J., files a dissenting statement.

**LOUIK, Judge, dissenting:**

I dissent and would remand for clarification on the ground that the only Order extant which grants an extension of time is the Order of Judge Reed dated December 2, 1977, but this Order was revoked by Judge Reed by an Order dated December 19, 1977. Therefore, at the time of the trial of this case, there was no Order of record granting any extension beyond 180 days.