570 A.2d 1323

COMMONWEALTH of Pennsylvania

v.

Edward D. MOYERS, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 13, 1989.

Filed Feb. 26, 1990.

John R. Kelsey, III, Lebanon, for appellant.

David P. Wingert, Asst. Dist. Atty., Lebanon, for Com., appellee.

Before DEL SOLE, KELLY and HESTER, JJ.

DEL SOLE, Judge:

Edward D. Moyers, the Appellant in this case, was tried in the Court of Common Pleas of Lebanon County on the charges of delivery of one gram of cocaine and criminal conspiracy. After a jury trial he was found not guilty of delivering a Schedule II controlled substance, and guilty of criminal conspiracy.

In the summer of 1986 two undercover officers, Agent Jeanne Berlin, from the Commonwealth's Bureau of Narcotic Investigations, and Detective Sergeant Paul Zechman, of the Lebanon County Detective Bureau, were involved in a narcotics investigation concerning the personnel who worked in the "backside" (the area containing the stables, the equipment, the barn etc.), of the Penn National Racetrack in Dauphin County. In the course of the investigation, the officers had occasion to work with Judy Wood, a groom at Penn National, as an informant.

On the date in question, the two officers received word from Ms. Wood that she was planning to buy some cocaine from Thomas Brightbill after the third race. Prior to that buy, the officers met with Ms. Wood in the tack room of the racetrack, and they then went together to see Mr. Brightbill in the kitchen area nearby. The officers posed as horse

owners who were seeking to buy a gram of cocaine. When Mr. Brightbill arrived, he stated that he had been unable to locate his source, one Bill Bolling, and consequently it was necessary to go to Siler's bar in Dauphin County to find him.

As a result, Ms. Wood, her boyfriend, the two officers and Mr. Brightbill went to Siler's bar, using two separate cars. While Mr. Brightbill went into the bar, Agent Berlin gave Ms. Wood one-hundred and five dollars ($105.00), one hundred for the cocaine and five dollars for whomever provided the cocaine. Within a few minutes, Mr. Brightbill and Appellant emerged from the bar. Appellant gave Ms. Wood a hug, and then Ms. Wood walked over to the officers' car to tell them that Appellant would get her a gram of cocaine. She then left with Appellant Moyers in his pickup truck to go to a party in Valley Glen, in Lebanon County, where she was to procure the cocaine.

Mr. Brightbill and the officers remained behind in Siler's parking lot. When the others had left, Mr. Brightbill came over to the officers' car and reassured them that everything would be all right, that Appellant would take Ms. Wood to buy cocaine, and that he would bring her back to Siler's bar. In fact, Mr. Brightbill went in and out of the bar several times in order to reassure the officers, saying that Appellant would get the cocaine, that "Judy and Ed should be back shortly." (N.T. September 1-2, 1987, at 45).

Approximately one half-hour later, Appellant and Ms. Wood returned to Siler's bar. Ms. Wood handed a packet containing cocaine to Agent Berlin, and then these three went together to the Village Inn in Dauphin County where officers debriefed Ms. Wood.

Appellant raises two issues that may be best understood by being discussed together. First, he claims that the Lebanon County court lacked subject matter jurisdiction because the conspiracy took place in Dauphin County, and secondly, that the Commonwealth failed to prove that he did an overt act in furtherance of the conspiracy as required under 18 Pa.C.S.A. § 903(e). Appellant's argument is that

although the illegal transfer of cocaine allegedly took place in Lebanon County, the jury found Appellant not guilty of delivery, and thus the only overt act that occurred in Lebanon County is taken out of consideration. We find this argument to be without merit.

■ It is well settled that prosecution for criminal conspiracy may be brought in the county where the unlawful combination was formed, *or* in any county where an overt act was committed by any of the conspirators in furtherance of the conspiracy. *Commonwealth v. Thomas*, 410 Pa. 160, 189 A.2d 255 (1963); *Commonwealth v. Craft*, 304 Pa.Super. 494, 450 A.2d 1021 (1982); 18 Pa.C.S.A. § 903(d)(2)(i). Thus, if the Commonwealth can prove that an overt act in furtherance of the conspiracy occurred in the relevant jurisdiction then jurisdiction is proper.

■ While it is undoubtedly true that the conspiracy was formed in Dauphin County, Appellant's act of driving Ms. Wood to Valley Glen in Lebanon County in order to accomplish the goal of the conspiracy, procurement of cocaine, was clearly an overt act in furtherance of the conspiracy.

In *Commonwealth v. Craft*, 304 Pa.Super. 494, 499, 450 A.2d 1021 (1982), this court held that when two conspirators commenced driving from Crawford County to Armstrong County for the purposes of completing their criminal plan, they "took steps in Crawford County in furtherance of the conspiracy." This act was considered a sufficiently overt act which established jurisdiction in Crawford County.

Similarly, in *Commonwealth v. Simeone*, 222 Pa.Super. 376, 294 A.2d 921 (1972), this court found that jurisdiction was proper in Bucks County when one of the conspirators stole a truck filled with merchandise in Philadelphia County and drove it to Bucks County where Appellant unloaded the goods and stored them in his warehouse. Generally, our court has held that although a conspiracy may be formed in one county, an overt act, although it entails only a slight amount of activity in another county in furtherance of that

conspiracy, is sufficient to establish jurisdiction for the purposes of a conspiracy prosecution.

Thus, although the jury in the instant case found Appellant not guilty of delivering or attempting to deliver the cocaine to Ms. Wood, it evidently believed that Appellant was part of a conspiracy to provide such cocaine, and his action in driving Ms. Wood to the party in Lebanon County where the cocaine was purchased was an overt act by a co-conspirator in furtherance of the conspiracy, sufficient to establish jurisdiction in Lebanon County and sufficient to prove that Appellant did an overt act in furtherance of the conspiracy. *Commonwealth v. Brinton*, 275 Pa.Super. 304, 418 A.2d 734 (1980).

Next, Appellant claims that the court erred in admitting hearsay evidence by the co-conspirator Thomas Brightbill, who did not testify at trial. Specifically, Appellant objects to the admission of the testimonial evidence given by Officers Berlin and Zechman concerning Mr. Brightbill's statements to the Officers in the parking lot of Siler's bar reassuring them that Ms. Woods would return with the Appellant and would have the cocaine. (N.T. 44–45, 67–69, September 1–2, 1987).

These statements were admitted into evidence under the co-conspirator exception to the hearsay rule. *Commonwealth v. Ellsworth*, 409 Pa. 505, 187 A.2d 640 (1963). This exception allows statements by a co-conspirator to be admitted against an accused if the statements are made during the conspiracy, in furtherance thereof, and where there is other evidence of the existence of a conspiracy. *Commonwealth v. Dreibelbis*, 493 Pa. 466, 475, 426 A.2d 1111 (1981).

Conspiratorial statements combine both assertive elements which implicate hearsay problems and non-assertive elements which are beyond the reach of the hearsay doctrine. In the instant case, Agent Berlin stated on direct examination:

Detective Sergeant Zechman, Mike Thome [Judy Wood's boyfriend], and myself waited on the Siler's parking lot.

Thomas Brightbill came over to us and reassured us that Ed knew Judy because he has worked at the track, and that he would take her to get the gram of cocaine, and that he would bring her back to us, and that everything would be all right. In fact, Thomas Brightbill went in and out of the bar several times, coming back over to us, saying that Ed Moyers would get it; and he said wouldn't be that long, and Judy and Ed should be back shortly. (N.T. 44–45, September 1–2, 1987).

These statements made during the conspiracy to buy illegal drugs, in which the Appellant is named as a member of the conspiracy and the probable source of the drugs, contain both assertive and non-assertive elements. The reassurances to the potential buyers that Ms. Woods would return with the cocaine, and that Appellant would be able to secure the cocaine for her, invite reliance in the listeners/buyers, and subject the declarant to the risk of loss of business or reprisal if the declarant can not deliver. For these reasons, these statements are considered verbal acts which are outside the reach of the hearsay doctrine, much like the way statements made in the course of carrying out or forming a contract are considered non-assertive statements. The inference that someone will secure the drug comes from this non-assertive element of the statement, and to the extent that non-assertive conduct is reliable because it brings with it commitment and assumption of risk, it tends circumstantially to prove the reliability of the assertive aspect of the statement, namely that Appellant is that someone who will provide the illicit substance.

Moreover, the requirements that the statement be made, "in the course of and in furtherance" of the conspiracy increases reliability by helping to identify statements amounting to action or accompanying conduct, and suggests that the statement makes sense in light of what else is known. The requirement that there be independent evidence of the existence of the conspiracy means that more will in fact be known. Mueller, *"The Federal Co-conspira-*

*tor Exception: Action, Assertion, Hearsay,"* 12 Hofstra Law Review 323 (1984).

Appellant claims that the statements made by Mr. Brightbill were not made during the course of or in furtherance of the crime, because the life span of the conspiracy had ended as far as Mr. Brightbill was concerned when Appellant and Ms. Wood left. Furthermore, Appellant claims that these statements could not further the conspiracy because they were made to third parties who were not involved in the conspiracy. We disagree.

First, it is well settled that declarations of one co-conspirator made to third parties, even in the absence of other conspirators, are admissible as evidence against all conspirators. *Commonwealth v. Evans,* 489 Pa. 85, 92, 413 A.2d 1025, 1028 (1980); *Commonwealth v. Scarborough,* 313 Pa.Super. 521, 460 A.2d 310 (1983). Therefore, the fact that the statement was made to the undercover detectives, third party non-conspirators who were passing themselves off as potential buyers, does not take the statement out of the co-conspirator exception.

Next, in determining whether a statement was made in the course of a conspiracy we refer to our supreme court's statement in *Evans, supra,* 489 Pa. at 92, 413 A.2d 1025, *quoting, U.S. v. Hickey,* 360 F.2d 127, 141 (7th Cir.1966):

> The duration of a conspiracy depends upon the facts of the particular case, that is it depends upon the scope of the agreement entered into by its members. Generally, the conspiracy ends when its principal object is accomplished ...

Here, the duration of the agreement was limited by the goal of furnishing cocaine to the undercover officers. The hearsay statement was made prior to the time the cocaine was furnished, and therefore it was made in the course of the conspiracy. Moreover, the statement was uttered "in furtherance" of the goal of making a sale, because declarant attempted by these statements to reassure the buyers that Appellant was a reliable person who

would return with Ms. Wood and the cocaine, and would not abscond with the money. Finally, there was substantial independent evidence of the existence of the conspiracy as revealed in the testimony of Ms. Wood, the Officer's observations of what occurred at the racetrack and in the parking lot of Siler's bar, and in the eventual success of the enterprise.

However, our supreme court has held that even though a statement may come within an exception to the hearsay rule, it must still be tested against the confrontation clause. *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387 (1981). Pursuant to the Supreme Court's decision in *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 221, 27 L.Ed 2d 213 (1970), that the Constitution requires hearsay offered against the accused to be reliable, *Coccioletti* requires not only that the proffered statement fall within the co-conspirator exception to the hearsay rule, but that the statement contain certain "indicia of reliability." *Coccioletti, supra,* 493 Pa. at 112, 425 A.2d 387. Such "indicia of reliability" include, personal knowledge of the assertions made in the statements, the absence of an apparent reason for the declarant to lie, spontaneity, findings that the statement was against the declarant's own penal interest, *Id.,* and evidence that the statement was made to other members of the venture in an effort to maintain trust and keep the venture together. *United States v. Ammar,* 714 F.2d 238, 256–57 & n. 16 (3d Cir.1983).

■ We find all these indicia in the instant statement. Mr. Brightbill had personal knowledge of the Appellant and his relationship to Ms. Wood; there was no reason for Appellant to lie, as he risked potential retaliation from the defrauded customers; the statements were spontaneous, unprompted by any questions or requests for reassurance, and they implicated the declarant in the conspiracy to deliver cocaine in opposition to his own penal interest. Finally, they were made in an effort to maintain trust and keep the venture together.

These many "indicia of reliability" when combined with our earlier finding that the statements fall well within Pennsylvania's co-conspirator hearsay exception, support the conclusion that the trial court properly admitted these out-of-court statements into evidence at trial.

Next we consider Appellant's contention that his sentence of 25 to 50 months was excessive. This sentence was in the mitigated range of the sentencing guidelines. Appellant contends that his prior record which consisted of convictions on two burglary charges fourteen (14) years prior to the instant conviction should be disregarded because they occurred many years ago when Appellant was only eighteen (18) years old. He also contends that the sentencing judge was confused by an erroneous report which stated that Appellant was found guilty of delivery, and consequently sentenced him too harshly. We disagree.

Although initially there was some confusion as to what the verdict was, this matter was quickly corrected as evidenced by the court's statement that Appellant was found not guilty of delivery; and, "He is here on the conviction of criminal conspiracy." (Sentencing Transcript at 3, June 28, 1989).

Finally, imposition of a proper sentence is a matter committed to the sound discretion of the trial court. *Commonwealth v. Scarborough*, 313 Pa.Super. 521, 460 A.2d 310 (1983) Broad discretion is given to the sentencing judge. *Commonwealth v. Galloway*, 302 Pa.Super. 145, 448 A.2d 568 (1982). The court was well aware of Appellant's domestic and work situation, his fourteen years without a conviction and of the pre-sentence report. Appellant has not indicated that the court considered any improper criteria when imposing sentence, and it is clearly not an abuse of discretion for the court to sentence within the mitigated range of the sentencing guidelines while taking into account Appellant's prior record score.

Accordingly, we affirm the judgment of sentence of the trial court on all particulars.

KELLY, J., files a concurring and dissenting statement.

KELLY, Judge, concurring and dissenting:

I join in all aspects of the majority opinion except the treatment of appellant's challenge to the discretionary aspects of sentence. A recent *en banc* panel of this Court has ruled that to evaluate the substantive merits of challenges to discretionary aspects of sentences without regard to whether the appearance of a substantial question has been presented, as does the majority, allows appellant " 'in effect [to obtain] an appeal as of *right* from the discretionary aspects of a sentence.' " *Commonwealth v. Williams*, 386 Pa.Super. 322, 327, 562 A.2d 1385, 1388 (1989) (quoting *Commonwealth v. Tuladziecki*, 513 Pa. 508, 513, 522 A.2d 17, 19 (1987)). Instantly, appellant has failed to include the required Pa.R.A.P. 2119(f) statement and cursory review of the brief fails to reveal the appearance a substantial question. *See Commonwealth v. Osteen*, 381 Pa.Super. 120, 128, 552 A.2d 1124, 1128 (1989) (challenges based on the amount of *weight* accorded to legitimate sentencing factors do not raise a substantial question absent extraordinary circumstances); *Commonwealth v. Willis*, 380 Pa.Super. 555, 588, 552 A.2d 682, 689 (1988) (*en banc*) (same); *Commonwealth v. Chilquist*, 378 Pa.Super. 55, 59, 548 A.2d 272, 274 (1988) (same); *Commonwealth v. Thompson*, 377 Pa. Super. 506, 511, n. 1, 547 A.2d 800, 802 n. 1 (1988) (same); *Commonwealth v. Carr*, 375 Pa.Super. 168, 173, 543 A.2d 1232, 1234 (1988) (same); *Commonwealth v. Moran*, 369 Pa.Super. 109, 112, 534 A.2d 1103, 1104 (1987) (same). Thus, I would deny allowance of appeal. *See Commonwealth v. Williams, supra*, 562 A.2d at 1389; *Commonwealth v. Graham*, 372 Pa.Super. 365, 368–69, 539 A.2d 838, 839 (1988); *accord Commonwealth v. Gambal*, 522 Pa. 280, 561 A.2d 710 (1989).

Hence, I concur in part, and dissent in part.