J-A01041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| FAYETTA VAUGHAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALGIE WILLIAMS | : | No. 725 EDA 2023 |

Appeal from the Judgment Entered March 17, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 210501053

BEFORE: LAZARUS, P.J., PANELLA, P.J.E, and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED MARCH 22, 2024**

Fayetta Vaughan appeals from the judgment entered March 17, 2023,[1] after the trial court denied her motion for post-trial relief in the instant personal injury action. Following a thorough review of the record, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Vaughan attempts to appeal from the March 3, 2023 order denying her post-trial motion. An appeal properly lies from the entry of judgment, not from an order denying a post-trial motion. *See **Johnston the Florist, Inc. v. TEDCO Constr. Corp**.*, 657 A.2d 511 (Pa. Super. 1995). However, a final judgment that is entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction. *See **Drum v. Shaull Equipment and Supply, Co**.*, 787 A.2d 1050, 1052 n.1 (Pa. Super. 2001). Here, Vaughan filed a premature notice of appeal on March 16, 2023, prior to the entry of judgment. Nevertheless, the record reflects that judgment was entered on March 17, 2023. In accordance with the Pennsylvania Rules of Appellate Procedures, we treat Vaughan's notice of appeal as if it was filed after the entry of judgment and on the date thereof. *See* Pa.R.A.P. 905(a)(5). Accordingly, the instant appeal is properly before this Court. We have corrected the caption to reflect that this appeal was taken from the March 17, 2023 judgment.

Briefly, this matter arises from a November 9, 2019 incident involving the Appellee, Algie Williams, striking the driver's side of Vaughan's vehicle with her own vehicle after apparently disregarding a stop sign. Thereafter, Vaughan filed suit against Williams, alleging negligence. In her amended complaint, Vaughan averred that she had been seriously and permanently injured in this automobile accident.

Prior to trial, Williams filed a motion *in limine* for the court to ascertain whether Vaughan was bound by a limited tort election in her automobile insurance policy, underwritten by Progressive Specialty Insurance Company ("Progressive"). Appended to this motion was, *inter alia*, a copy of Vaughan's insurance policy and an independent form outlining Pennsylvania's "tort selection" options. That latter document contained Vaughan's electronic signature, dated April 20, 2016, demonstrating her agreement to limited tort coverage. Over Vaughan's objection, the court granted Williams's motion *in limine*, finding that Vaughan's right to recover in a vehicular accident was limited pursuant to her insurance policy and that she could only recover damages if she proved that she sustained a serious injury.

At the ensuing trial, the jury found that Vaughan had not sustained a serious injury from the at-issue automobile accident and thus, awarded no damages.[2] Vaughan subsequently filed a post-trial motion, principally asserting that the court erred in its determination that she was bound by a

---

[2] Vaughan did not present evidence at trial that she was entitled to economic damages.

limited tort election. Thereafter, the court denied her post-trial motion, and Vaughan timely appealed from the judgment. Vaughan and the trial court have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925, and Vaughan, on appeal, argues that the trial court erred in holding that she was bound by her limited tort insurance policy.[3]

As Vaughan challenges the trial court's ruling on a motion *in limine*, our review is limited to determining whether the trial court committed an abuse of discretion. **See Parr v. Ford Motor Co**., 109 A.3d 682, 690 (Pa. Super. 2014). An "[a]buse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." **Commonwealth v. Williams**, 241 A.3d 1094, 1101 (Pa. Super. 2020) (citation omitted).

In Pennsylvania, under the Motor Vehicle Financial Responsibility Law, drivers may select either full tort or limited tort coverage when purchasing their automobile insurance. **See** 75 Pa.C.S. § 1705. A driver with full tort coverage who is injured by a negligent driver can recover all medical and out-

_____

[3] Although Vaughan purports to present seven questions for our review and her argument section is divided into three sections, **see** Pa.R.A.P. 2119(a) (stating that the argument section of the appellant's brief shall be divided "into as many parts as there are questions to be argued"), all of Vaughan's arguments are challenges to the trial court's ruling that she was a limited tort policyholder.

of-pocket expenses and also may pursue financial compensation for pain and suffering and other non-economic damages. ***See*** 75 Pa.C.S. § 1705(a)(1)(B), (c); ***Varner-Mort v. Kapfhammer***, 109 A.3d 244, 248 (Pa. Super. 2015). "A limited-tort plaintiff also can recover all medical and out-of-pocket expenses; however, such a plaintiff cannot recover for pain and suffering or other non-economic damages unless the plaintiff's injuries fall within the definition of 'serious injury.'" ***Varner-Mort***, 109 A.3d at 248; ***see also*** 75 Pa.C.S. § 1705(a)(1)(A), (d). The statute defines a "serious injury" as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. § 1702. The resultant effect of this binary scheme is, *inter alia*, that "[p]ersons who elect limited tort coverage pay lower premiums." ***Bennett v. Mucci***, 901 A.2d 1038, 1041 (Pa. Super. 2006).

Williams submitted with her motion *in limine* several documents from Progressive initially identifying "Fayetta Vaughn" as the name of the insured, each of which bears the policy number 909791203. Of note, the first exhibit, titled "Notice to Named Insureds," which we refer to herein as the "Tort Election Form," expressly required the policyholder to choose either a limited or full tort option by signing where indicated. ***See*** Motion *in Limine*, filed 8/12/22, Exhibit "A". The name "Fayetta Vaughn" appeared on that document as an electronic signature on the line that corresponds with having elected a limited tort policy. ***Id***. Williams also attached an "Online signature confirmation" message from Progressive, thanking "Fayetta Vaughn" for

signing her "policy documents online." ***Id***., Exhibit "B". Williams included an "Application for Insurance," which indicates that a policy named under "Fayetta Vaughn" "provides limited tort insurance." ***Id***., Exhibit "D". Vaughan's last name appears in its correct spelling in the later-dated Exhibits "E" and "F", a change of coverage summary and renewal of insurance sheet, with both documents containing the same "provides limited tort insurance" language as the prior insurance application. ***Id***., Exhibits "E" and "F".

Williams also submitted an affidavit from Daniel Sluzala, a Progressive representative who explained that Vaughan's name was misspelled in the electronic signature on the Tort Election Form to conform to the original incorrect entry of her name on the policy by a Progressive employee. ***See*** Motion *in Limine* Sur-Reply, Exhibit "A", ¶¶ 4-5, 9-10.[4] Williams additionally provided to the court a transcript of an April 16, 2016 call between Vaughan and a person named Vivian, who worked on behalf of Progressive and, too, provided Vaughan with an automobile insurance quote. Vivian stated that

---

[4] Sluzala identified himself in the affidavit as a Progressive "Systems Consultant" who "was familiar with the online purchase of insurance … by Fayetta Vaughan on April 16, 2016[.]" Motion *in Limine* Sur-Reply, Exhibit "A", ¶¶ 4-5. Sluzala stated that Vaughan's name was originally misspelled in her policy documents because the telephone representative entered her last name as "Vaughn" when collecting information over the phone, and the e-signature was required to exactly match the name on the policy. ***See id***., ¶ 9. While Vaughan's name was corrected on later policy documents, this subsequent change did not affect her earlier "locked-in" signature on the Tort Election Form. ***See id***., ¶ 10.

Vaughan would have to be sent "specific notices concerning insurance coverage in Pennsylvania[.]" *Id*., Exhibit "B," at 7. Moreover, Vivian read to Vaughan her new policy number, which was 909791203, the same number included on the Tort Election Form and the other policy documents appended to the motion *in limine*. *See id*., at 8. Finally, in her deposition in this litigation, Vaughan answered "[y]es" to the question of whether she read and signed the documents when she purchased the at-issue insurance policy. *Id*., Exhibit "C".

Vaughan argues that Williams did not show that she elected limited tort in her automobile insurance policy because the Tort Election Form was not properly authenticated. "Unless stipulated, to satisfy the requirement of authenticating … an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Authentication generally entails a relatively low burden of proof. *See Commonwealth v. Jackson*, 283 A.3d 814, 818 (Pa. Super. 2022). "A proponent of a document need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder." *Gregury v. Greguras*, 196 A.3d 619, 633-34 (Pa. Super. 2018) (*en banc*). The proponent may authenticate a document through direct proof or by circumstantial evidence. *See id.*, at 633.

Pursuant to the Uniform Electronic Transfer Act, "[t]he act of the person [signing an electronic document] may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the

person to which the electronic … signature was attributable." 73 P.S. § 2260.305(a). The effect of an electronic signature is determined "from the context and surrounding circumstances at the time of its creation, execution or adoption[.]" *Id*., § 2260.305(b).

The trial court found that Williams "put on circumstantial evidence [that] the documents were … from Progressive, [which] included signatures from company officers, included [Vaughan's] electronic signature, included what type of coverage [she] received, and described the coverage in detail." Trial Court Opinion, 8/3/23, at 5-6. More particularly, "the limited tort waiver [and ancillary documents] supplied by [Williams] included [Vaughan's name], her address, her date of birth, her policy number, her electronic signature, the insurance company letterhead, the type of coverage she selected, her vehicle make and model, the cost of the insurance, and the policy period." *Id*., at 8. Notwithstanding the misspelling of her name, which was argued by Williams to be a simple scrivener's error that was corrected in subsequent policy-related documents, *see* N.T., 2/6/23, at 5, Vaughan "did not put on *any* evidence to refute the waiver [of full tort status]." Trial Court Opinion, 8/3/23, at 6 (emphasis added).

After reviewing the parties' briefs, the trial court opinion, and the certified record, we conclude that Vaughan has failed to demonstrate that the court abused its discretion or committed an error of law in granting Williams's motion *in limine*. Williams provided documentary evidence of Vaughan's

assent to a limited tort policy, evidence of which manifested itself in all policy-related documents following her election. Notably, Vaughan does not contend that the policy number, the same one discussed during the phone call with Progressive and written on every subsequent sheet generated by Progressive, was not hers. Furthermore, Vaughan admitted in her deposition that she read and signed the policy documents when she first contracted with Progressive for automobile insurance.

Other than describing the Tort Election Form as "inauthentic," Vaughan has not provided any basis to doubt its authenticity. To this point, we reemphasize the low burden of proof involved in authenticating any piece of evidence. **See Jackson**, 283 A.3d at 818. When faced with the collection of documents underpinning the opposing party's affirmative defense, Vaughan simply presented *no* factual evidence to raise authenticity concerns. Of course, these are the very policy documents she, too, would have, or at least should have, inherently been able to access. Accordingly, we agree with the lower court that Vaughan, at any juncture, could have "easily provided documents regarding the election of [her tort status] when she is, in fact, the policyholder and … in possession of her own policy." Trial Court Opinion, 8/3/23, at 5.

Vaughan further argues that the trial court erred when granting William's motion *in limine* by improperly relying on hearsay. Our review of the record reveals that Vaughan objected to two documents that Williams submitted with the motion *in limine*, the Tort Election Form and a letter from

Progressive dated April 20, 2016, the same date that she signed the Tort Election Form, instructing Vaughan that she was required to verify her policy information in order to avoid a premium increase. *See* Motion *in Limine*, filed 8/12/22, Exhibits "A" and "C"; Response to Motion *in Limine*, filed 8/22/22, ¶¶ 1, 7 (responding to paragraphs one and seven of the motion *in limine*, which discuss Exhibits "A" and "C," respectively).[5]

While the trial court did not address Vaughan's hearsay arguments, we find that they lack merit as the Tort Election Form and April 20, 2016 Progressive letter were not offered for the truth of any of the statements contained in those documents. *See* Pa.R.E. 801(c) (hearsay is an out-of-court statement offered for the truth of the matter asserted). As explained in the comment to Pennsylvania Rule of Evidence 801,

> There are many situations in which evidence of a statement is offered for a purpose other than to prove the truth of the matter asserted.
>
> Sometimes a statement has direct legal significance, whether or not it is true. For example, one or more statements may constitute an offer, an acceptance, a promise, a guarantee, a notice, a

---

[5] Vaughan's only other reference to hearsay was at oral argument on the motion *in limine* when her counsel stated that "[w]hat we [have] been presented with is hearsay documents." N.T., 2/6/23, at 8. However, counsel did not identify any specific documents that she was objecting to, and therefore we do not find that the invocation of the hearsay rule at oral argument extended her objection to the remaining documents introduced by Williams. Vaughan's later attempt to expand her hearsay objection to other documents in her post-trial motion fails as she was required to bring a timely objection before the trial court at the earliest possible stage of the adjudicatory process. *See In the Interest of L.V.*, 209 A.3d 399, 418 (Pa. Super. 2019).

representation, a misrepresentation, defamation, perjury, compliance with a contractual or statutory obligation, etc.

Pa.R.E. 801, Comment. Williams offered the Tort Election Form and other policy documents merely to show that Vaughan entered into a legally binding contract and Vaughan accepted limited tort as a term of that agreement. Therefore, as the trial court was not concerned with any representations or assertions within those documents but solely the "direct legal significance" of Vaughan's limited tort election, the court did not improperly rely on hearsay. *Id.*; *Commonwealth v. Moyers*, 570 A.2d 1323, 1326 (Pa. Super. 1990) (statement made by co-conspirator to buyers during drug deals that defendant would return shortly with cocaine "are considered verbal acts which are outside the reach of the hearsay doctrine, much like the way statements made in the course of carrying out or forming a contract are considered non-assertive statements"); *see also Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) (holding, under the analogous F.R.E. 801, that a "contract is a verbal act" with a "legal reality independent of the truth of any statement contained in it"; as such, "[t]he admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection[]").

Vaughan additionally argues that Williams failed to meet her burden of proof in establishing her policy-related affirmative defense, *see Matthews v. Malloy*, 272 A.2d 226, 228 (Pa. Super. 1970) ("When … a defendant relies upon a fact specifically mentioned in a policy of insurance to relieve him of a

liability generally assumed in a policy, it is an [a]ffirmative defense."), and highlights the fact that for one to obtain a limited tort policy, it must be clearly selected by the prospective/current policyholder, otherwise the default presumption in Pennsylvania is that a full tort option was selected. **See** 75 Pa.C.S. § 1705(a)(3).

We do not find that the trial court improperly absolved Williams of her burden of presenting her affirmative defense that Vaughan was bound by her tort election, as the court found that Williams had presented authenticated documents showing that Vaughan had elected a limited tort policy and only then offered Vaughan the opportunity to rebut this evidence that would show that there was a genuine issue as to the type of insurance that Vaughan held. We agree with the trial court that to then allow evidence to be presented at trial regarding whether Vaughan had a limited or full tort policy would only serve to confuse the jury. **See** Trial Court Opinion, 8/3/23, at 4. As to Vaughan's contention that full tort is the default presumption in the absence of clear notice and election, the electronically signed Tort Election Form, in no uncertain terms, delineates between the full tort and limited tort options that are available in Pennsylvania and plainly shows the annual price differences between those two choices. We additionally highlight that Vaughan received the benefit of the limited tort option, in the form of lower insurance premiums, throughout her time as an insured by Progressive, a period spanning over three years prior to the date of the accident. **See Bennett**, 901 A.2d at 1041.

Because Vaughan has not put forth a valid reason to deviate from the court's determination that she was bound by a limited tort policy, we affirm the judgment entered in favor of Williams and against Vaughan.

Judgment affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/22/2024